96 Pa. Commonwealth Ct. 461 (1986)
508 A.2d 360
Pennsylvania Social Services Union, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.
No. 2088 C.D. 1983.
Commonwealth Court of Pennsylvania.
Argued December 9, 1985.
April 22, 1986.
*462 Argued December 9, 1985, before Judges DOYLE and COLINS, and Senior Judge BLATT, sitting as a panel of three.
Joyce Ullman, for petitioner.
Nathan C. Pringle, Jr., Assistant Counsel, with him, Robert Greevy, Counsel, and John D. Raup, Chief Counsel, for respondent.
OPINION BY JUDGE COLINS, April 22, 1986:
The Pennsylvania Social Services Union (petitioner), in its capacity as collective bargaining representative for William Pryor (Pryor), petitions for review of an arbitration award upholding Pryor's dismissal for just cause by the Board of Probation and Parole (respondent). This matter is within the scope of the Public Employee Relations Act (PERA).[1]
Respondent had hired Pryor in 1971 under the auspices of its "ex-offenders program," which gave ex-convicts who had served time and been on parole an *463 opportunity to put their experience to the constructive good of the community while being gainfully employed. Pryor was employed as a Human Services Aide III and his duties encompassed serving as liaison between parolees and parole agents, conducting pre-parole investigations, assisting in pardon investigations, interviewing prospective parolees in prison, investigating the whereabouts of parole offenders who missed appointments, and so forth.
On March 21, 1980, Pryor was arrested in his home by Philadelphia Police Department detectives and charged with possession of controlled substances and possession with intent to deliver.[2] Police found on Pryor's person and in his home a number of controlled substances ranging from marijuana to assorted depressants, painkillers, and stimulants.[3] Pryor was also in possession of a .32 caliber Colt Revolver, although the gun appears to have been legally possessed and no charges were filed.
*464 On December 17, 1980, respondent sent Pryor a letter informing him he would be suspended for thirty (30) days pending investigation and final disposition of charges. On February 3, 1981, a second letter was sent extending his suspension nine (9) additional working days. On February 17, 1981, a third letter was sent terminating Pryor pending the outcome of the trial.
On March 3, 1981, the matter was listed for trial in Common Pleas Court in Philadelphia County. Counsel for Pryor presented a motion to suppress the drugs and other physical evidence as the fruits of an illegal search and seizure. This motion was granted on March 9, 1981, and on April 3, 1981, the charges were nolle prossed and Pryor was discharged.
On May 20, 1981, respondent informed Pryor in a fourth letter that he would not be reinstated because his conduct constituted a breach of the trust placed in him and because he appeared to be setting a poor example for other ex-offenders with whom he came into contact as a regular part of his duties. Petitioner then appealed Pryor's termination by submitting a grievance to arbitration pursuant to the collective bargaining agreement between petitioner and respondent. See Section 903 of PERA, 43 P.S. §1101.903. Petitioner as collective bargaining agent now appeals from the decision of the arbitrator which upheld Pryor's termination for just cause, seeking equitable and mandamus relief.
*465 Respondent has filed and argued a motion to quash this appeal. A motion to quash Pryor's own appeal from the award has already been granted,[4] and the remaining motion to quash as well as the appeal itself are now before us. Respondent sets forth several grounds in its motion to quash that are best considered as going to the merits of the appeal.
The first issue is whether we can review the arbitrator's determinations in light of the "essence test" applied to judicial review of PERA and non-PERA arbitrations. See Leechburg Area School District v. Dale, 492 Pa. 515, 424 A.2d 1309 (1981); Division 85, Amalgamated Transit Union v. Port Authority of Allegheny County, 62 Pa. Commonwealth Ct. 528, 437 A.2d 105 (1981).
Petitioner urges that review of the arbitrator's award is required to vindicate the constitutional rights of Mr. Pryor. Specifically, it is contended that Mr. Pryor's right to be free from unreasonable search and seizure, see U.S. Const. amend. IV; Pa. Const. art. I, §8, and his right to due process, see U.S. Const. amend. XIV, were violated at the hearing.
The issue of just cause for dismissal of Mr. Pryor is clearly arbitrable within the terms of the collective bargaining agreement and is within the essence of the contract. This is so even where, as here, the determination of just cause encompasses an evaluation of potentially criminal conduct outside, and potentially unrelated to, the workplace. See Commonwealth v. Joint *466 Bargaining Committee of Pennsylvania Social Services Union, 82 Pa. Commonwealth Ct. 200, 206-08, 475 A.2d 1333, 1336 (1984). The arbitrator is possessed of jurisdiction if there is involved a dispute which arguably involves an interpretation or violation of one of the provisions of the collective bargaining agreement. Id. at 206, 475 A.2d at 1333, n. 4. This jurisdiction must be exercised even if it appears that the award may be vacated upon judicial review. See Pennsylvania Labor Relations Board v. Bald Eagle Area School District, 499 Pa. 62, 451 A.2d 671 (1982).
The issue is whether we can disturb an arbitrator's award under PERA within the zone of the essence test which is attacked on grounds of unconstitutionality. The review of arbitral awards under PERA has not been without controversy. See Comment, Judicial Review of Labor Arbitration Awards Under Pennsylvania's Public Employee Relations Act, 83 Dick. L. Rev. 795-816 (1979). Our legislature in 1980 passed 42 Pa. C. S. §7302, which is analogous to the former Sections 10, 11 and 16 of the Arbitration Act of 1927.[5] This provision gives us the right to review certain types of arbitration awards for errors of law under the judgment n.o.v. standard. Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA), 473 Pa. 576, 375 A.2d 1267 (1977). Compare Pennsylvania Labor Relations Board v. Bald Eagle Area School District, 499 Pa. 62, 67, 451 A.2d 671, 673 (1982); Martin v. State Automobile Insurance Association, 344 Pa. Superior Ct. 531, 534-37, 496 A.2d 1233, 1235-36 (1985); Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union, 79 *467 Pa. Commonwealth Ct. 594, 470 A.2d 194 (1985). Since under Section 903 of PERA, state collective bargaining employees are normally compelled to arbitrate, see 43 P.S. §1101.903, we can exercise our right of review under 2 Pa. C. S. §7302 to remedy claimed constitutional illegalities and ascertain whether the award conflicts with a fundamental policy expressed in law. Compare Scranton Federation of Teachers, Local 1474 AFT v. Scranton School District, 498 Pa. 58, 444 A.2d 1144 (1982).
Turning to the merits, therefore, the Fourth Amendment question is whether an arbitrator may rely on evidence, excluded from a criminal proceeding as the fruits of an illegal search and seizure, to establish that an employer had just cause to fire an employee. While we cannot condone the illegal seizure of evidence in violation of Mr. Pryor's constitutional rights, we cannot say in the first instance that the remedy of the exclusionary rule can be afforded him in narrow judicial review of a PERA-governed labor arbitration.
The United States Supreme Court has construed the exclusionary rule as a remedy, not a right. U.S. v. Calandra, 414 U.S. 338 (1974); U.S. v. Janis, 428 U.S. 433 (1975). The Supreme Court takes the view that evidence, barred from a criminal proceeding as a deterrent to illegal police misconduct, may be admissible in a civil proceeding where the deterrent effect of applying the remedy is outweighed by the costs of exclusion and where the party whose rights were violated is not without other forms of redress.
This Court has recently considered the application of the exclusionary rule to a civil proceeding in an en banc decision, Deshields v. Chester Upland School District, 95 Pa. Commonwealth Ct. 414, 505 A.2d 1080 (1986). In Deshields, a somewhat similar fact situation was presented wherein a custodian of a school was dismissed *468 by the School District for improper conduct evidenced by a drug-related arrest. The contraband, 115 grams of marijuana, was suppressed in the criminal proceeding but the officer testified and the evidence was admitted at the termination hearing. In Deshields, it was determined that the exclusionary rule of Mapp v. Ohio, 367 U.S. 643 (1961), was inapplicable to a dismissal proceeding.
Likewise, in Kleschick v. Civil Service Commission of Philadelphia, 27 Pa. Commonwealth Ct. 125, 365 A.2d 700 (1976), this Court specifically held the exclusionary rule inapplicable in a civil proceeding. Kleschick was a police officer, and had been suspended when he was arrested for marijuana possession. The Civil Service Commission reinstated him because the evidence was excluded as the fruits of an illegal search and seizure and it wished to give him "the benefit of the doubt," but denied him back pay because of his "unseemly conduct," Id. at 12, 365 A.2d at 701. In upholding the denial of back pay, this Court held that the exclusionary rule was inapplicable to a proceeding to determine whether back pay should be awarded.
Looking to the test of U.S. v. Janis, utilized in Deshields, we have no difficulty in determining that the exclusionary rule is not an appropriate tool for remedying the introduction of illegally-seized evidence in a PERA labor arbitration. The deterrent effect would be very slight, as the Philadelphia Police Department or members thereof perpetrated the illegal seizure and would not be deterred by the exclusion of the evidence in an unrelated arbitration before an unrelated state agency. The distinction between local department and state agency, while not amounting to a twin sovereign problem, see U.S. v. Rickus, 737 F.2d 360 (3d Cir. 1984), cert. denied, 106 S. Ct. 252 (1985), is significant in assessing the level of prophylaxis the rule's application will engender.
*469 On the cost side, it is readily apparent that the exclusion of evidence on technical grounds of Fourth Amendment law in a labor or PERA arbitration hearing could lead to a breakdown in the manner in which such arbitrations are conducted and reviewed. Normally, arbitrations are not strictly bound by technical rules of evidence, and this plays an important role in promoting expedient dispositions. Few areas of law are as technical or filled with uncertainty as the right to be free from unreasonable searches and seizures, and it would be unrealistic to expect an arbitrator to properly apply them in the relevant cases.
As applied to this case, the costs of the exclusionary rule would be high. Suppression of the evidence and testimony against Mr. Pryor in the termination hearing could lead to his reinstatement to a position where he deals daily with the rehabilitation needs of prisoners and parolees. Pryor, an ex-convict to begin with, was given a second chance in life and placed in a position of trust where he could serve as a role model to inmates and ex-convicts. If we are to believe the findings of the arbitrator, he deliberately abused that trust by engaging in a course of drug dealing with the very persons assigned to him by the respondent for rehabilitation. A clearer case of just cause for termination could scarcely be made.[6]
*470 Finally, we note that Mr. Pryor is not wholly without remedy. Since the loss of his job may arguably be traced to a violation of his constitutional rights, an action may lie pursuant to 42 U.S.C. §1983. Of course, we express no opinion as to the merits or probable outcome of such action.
Turning to the due process deprivation claim, we find the cases cited by petitioner: Perri v. Aytch, 724 F.2d 362 (3d Cir. 1983), Abraham v. Pekarski, 728 F.2d 167, cert. denied, Pekarski v. Abraham, 467 U.S. 1242, (1984) and Smith v. Pittsburgh, 585 F. Supp. 941 (W.D. Pa. 1984), rev'd, 764 F.2d 188 (3d Cir.), cert. denied, 106 S. Ct. 349 (1985), to be inapposite to Mr. Pryor's situation. Of these cases, only Smith involved a union represented employee, and the District Court opinion is of dubious validity in light of sharply-worded criticisms in the Third Circuit reversal. See Smith, 764 F.2d at 191-92.
Mr. Pryor received adequate pre-termination notice and through his union, the petitioner, was afforded an arbitration hearing where he was well-represented by union counsel. His due process rights under the collective bargaining agreement were far greater than they would be under the judicially-created schemes set forth in cases like, Smith, Abraham, and Perri. Compare Board of Regents v. Roth, 408 U.S. 564, 570, n. 8 (1972); Cleveland Board of Education v. Loudermill, U.S., 105 S. Ct. 1487 (1985); Adamovich v. Department of Public Welfare, 95 Pa. Commonwealth Ct. 22, 28, 504 A.2d 952, 956-58 (1986).
The union in essence is attacking as inconsistent with federal due process requirements for terminating *471 public employees the very procedures it bargained for on Mr. Pryor's behalf when it signed the collective bargaining agreement. We believe these procedures satisfied the requirements of due process because there was adequate notice and investigation prior to termination. Assuming arguendo that they did not, however, Mr. Pryor willingly waived his right to independently raise due process objections in exchange for his greater protections under the collective bargaining scheme. His remedy would be to bring the appropriate action against his own union representative based on allegations of bad faith, fraud, or other cognizable theories. See Comment, Developments in the Law - Public Employment, 97 Harv. L. Rev. 1611, 1724-26, 1780-1800 (1984).[7]
For the above reasons, the petitioner's challenge is rejected and the arbitrator's award is affirmed. In light of this result, the mandamus issue need not be reached.

ORDER
AND NOW, April 22, 1986, Respondent's Motion to Quash is denied and the arbitrator's award, Bureau of Labor Relations Case No. 81-2203, filed July 9, 1983, is hereby affirmed.
NOTES
[1] Act of July 23, 1970, P.L. 563, No. 195, as amended, 43 P.S. §§1101.101-1101.2301.
[2] See Section 113 of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §780-113.
[3] The police chemical lab report itemized the seized items as follows:

1. One (1) orange plastic vial contains 40 millilliters of an orange liquid which contains Methadone.
2. One (1) brown glass vial contains 50 white tablets marked `SKF' which contains Codeine and Phenacetin.
3. One (1) orange plastic vial contains 60 pink capsules with white bands marked `PD 373' which contains Diphenhydraimine.
4. One (1) clear glass vial contains 100 rhemboidal shaped tablets which contains Hydrocodeine and Phenyltoloxamine.
5. One (1) glass bottle contains 20 milliliters of a clear liquid which contains Meparidine.
6. One (1) large manila envelope contains 2.9 grams of marijuana prepared for smoking ...
7. One (1) manila envelope contains 0.1 grams of marijuana prepared for smoking ...
8. Six (6) plastic packets contain respectively 313, 318, 323, 159, 205 and 280 milligrams of an off-white powder which contains Methamphetamine.
9. Two (2) plastic bags contain respectively 0.37 and 9.30 grams of an off white powder containing Methamphetamine.
Dealing paraphernalia, including plastic bags, rubber bands and a scale, were also found in the home.
[4] Memorandum opinion and order of BUCHER, J., filed January 17, 1984. Pryor does not have standing to maintain an appeal in his own name from the arbitration. See McCluskey v. Department of Transportation, 37 Pa. Commonwealth Ct. 598, 391 A.2d 45 (1978); Maggs v. Pennsylvania Labor Relations Board, 50 Pa. Commonwealth Ct. 549, 413 A.2d 453 (1980); Ziccardi v. Commonwealth, 500 Pa. 326, 456 A.2d 979 (1982).
[5] Act of April 25, 1927, P.L. 381, as amended, 5 P.S. §§170, 171, 176, repealed by Section 501(a) of the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693.
[6] Approaching the problem from another angle, there is substantial case authority that a labor arbitrator in assessing conduct for a just cause determination is not bound by the determination of guilt or innocence in a criminal proceeding. See Commonwealth v. Joint Bargaining Committee of Pennsylvania Social Services Union, 82 Pa. Commonwealth Ct. 200, 475 A.2d 1333 (1984); Local 863 International Brotherhood of Teamsters v. Jersey Coast Egg Producers, 773 F.2d 530 (3d Cir. 1985). In the latter case, the defendant was found guilty of theft and convicted of a misdemeanor, nonetheless the arbitrator found just cause for dismissal lacking. Held, the determination of just cause was a matter of independent inquiry and the court conviction did not bind the arbitrator in his factfinding. Compare City of Lebanon v. District Council 89, AFSCME, 36 Pa. Commonwealth Ct. 442, 388 A.2d 1116 (1978) (criminal conviction is binding on determination of labor arbitrator).
[7] We also note that the union failed to properly preserve the due process issue for review beyond contending that there was inadequate notice of the specific charge in this petition for review.