598 A.2d 1274

**COMMONWEALTH of Pennsylvania, OFFICE OF ADMINISTRATION**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Appellants at No. 34,**

**American Federation of State, County and Municipal Employees, Council 13, AFL–CIO, Intervenors– Appellants at No. 33.**

Supreme Court of Pennsylvania.

Argued May 11, 1990.

Decided Oct. 31, 1991.

Stuart E. Davidson, Charles T. Joyce, Philadelphia, for appellant.

James L. Crawford, Chief Counsel, for Labor Relations Bd.

Frank A. Fisher, Chief Counsel, for Office of Adm.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

In this case, Appellant, Pennsylvania Labor Relations Board ("PLRB" or "Board"), and Intervenor-Appellants, Council 13 of the American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME"), appeal from an Order of the Commonwealth Court. Therein, the Com-

monwealth Court reversed the decision of the Pennsylvania Labor Relations Board, 120 Pa.Cmwlth. 336, 549 A.2d 240, in which the Board held that the Public Employee Relations Act ("PERA"), the Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101, *et seq.*, mandated that any unresolved collective bargaining impasses of prison guards were to be initially submitted to interest arbitration for resolution. The core of the impasse concerns whether certain matters raised were properly the subject of bargaining or whether those items were excluded as falling within the managerial prerogative of the public employer.

The Commonwealth of Pennsylvania, Appellee, and AFSCME (Intervenors) were parties to a collective bargaining agreement covering terms and conditions of employment for prison guards which agreement contained an expiration date of June 30, 1985. In May, 1984 the parties commenced negotiations in an effort to renew the existing collective bargaining agreement. Included among AFSCME's original list of demands as well as subsequent modifications and additional demands were eight additional matters which the Commonwealth considered to be matters of "inherent managerial policy" and, as such, non-bargainable.[1]

After considerable negotiations the parties reached an impasse, and AFSCME, after seeking the involvement of the Pennsylvania Bureau of Mediation, evidenced its desire to proceed to binding interest arbitration pursuant to Section 805 of the PERA.[2] On June 6, 1985, the Common-

1. The issues the Commonwealth deemed inherent managerial prerogative and thus non-negotiable were: 1) performance evaluations; 2) use of telephones; 3) binding arbitration for classification grievances; 4) work assignments; 5) the patient/staff ratio joint committee; 6) uniform requirement; 7) insurance and medical benefits to persons already retired; 8) part-time or temporary positions.

2. Section 805 of PERA provides as follows:
   **Section 805. Guards and court personnel; Binding Arbitration.** Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in

wealth declined to appoint an arbitrator and refused to proceed to arbitration expressly because AFSCME had failed to withdraw those bargaining demands which the Commonwealth determined to be "non-mandatory subjects of bargaining." *Joint Reproduced Record at 19a.* On June 21, 1985, AFSCME filed a charge of unfair labor practice with the PLRB. In this charge AFSCME alleged that the Commonwealth violated Section 1201(a)(5)[3] and Sections 805, *supra,* and 806[4] of Act 195 by virtue of failing to enter the arbitration process.

Subsequent discussions by and between AFSCME and Commonwealth representatives resulted in an agreement between the parties to proceed without delay to arbitration regarding those issues which both parties agreed were mandatory subjects for bargaining. The parties further

collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, *the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties* with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only. (Emphasis added.)
43 P.S. § 1101.805.

3. Section 1201(a)(5) of PERA provides:
(a) Public employers, their agents or representatives are prohibited from:
(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.
43 P.S. § 1101.1201(a)(5).

4. Section 806 of PERA provides as follows:
**Section 806. Selection of arbitrators for units involving guards and court personnel**
Panels of arbitrators for bargaining units referred to in section 805 of this article shall be selected in the following manner:
(1) Each party shall select one member of the panel, the two so selected shall choose the third member.
(2) If the members so selected are unable to agree upon the third member within ten days from the date of their selection, the board shall submit the names of seven persons, each party shall alternately strike one name until one shall remain. The public employer shall strike the first name. The person so remaining shall be the third member and chairman.
43 P.S. § 1101.806.

agreed to submit to the PLRB for resolution the contested issue of whether the new demands made by AFSCME, claimed to be non-bargainable by the Commonwealth, should be submitted to the arbitration panel for preliminary consideration.

The matter was brought before a hearing examiner on July 10, 1985, and again on September 18, 1985. The examiner issued a Proposed Decision and Order in which he concluded that the Commonwealth had violated Sections 1201(a)(1) and (5) of the Act by refusing to proceed to arbitration regarding the items it contended were non-mandatory subjects of bargaining. The examiner concluded further that those issues should be submitted to the interest arbitration panel convened under Section 805 to fashion an award. An award issued pursuant to Section 805 could then be reviewed by the Board to determine whether the award was a proper exercise of the arbitrator's authority. *See infra* note 7. The Commonwealth filed Exceptions to the Proposed Decision and Order of the Hearing Examiner. The Board issued its Final Order on November 17, 1986, dismissing the Commonwealth's Exceptions and making the Proposed Decision and Order of the Hearing Examiner absolute and final.

By order dated October 12, 1988, in response to a Petition for Review of the Order filed by the Commonwealth on December 17, 1986, the Commonwealth Court reversed the PLRB. We granted the petitions for allowance of appeal filed by both the Board and by AFSCME on May 26, 1989, to review this matter which presents a question of first impression. The issue presented is whether authority rests in the Board or in an arbitrator to determine the validity of a claim that a bargaining demand falls within the category of inherent managerial policy.

Appellants, the Board and AFSCME, contend that the Board correctly determined that the question of arbitrability is one for the arbitrator. Appellants argue that the Board's decision is consistent with prior Commonwealth

Court decisions which held that the Commonwealth will have the right to appeal any award by the arbitrator.

Appellee, the Commonwealth, maintains that under Sections 701 and 702 of PERA,[5] the public employer expressly has the right to decline to bargain over certain issues. It argues, in the alternative, that any disputes concerning whether or not issues deal with inherent managerial policy are exclusively within the jurisdiction of the Pennsylvania Labor Relations Board to resolve, and that an arbitrator or an arbitration panel are without jurisdiction to make such a determination. Thus, the Commonwealth argues that the conclusion reached by the Board, vesting in an arbitration panel the power to determine whether the issues involved are matters of inherent managerial policy, is necessarily an error of law. For the reasons that follow, we are constrained to disagree with this argument and must reverse the Commonwealth Court which agreed with the Commonwealth.

5. Section 701 of PERA, 43 P.S. 1101.701, enunciates those matters which may be properly subject to collective bargaining agreements. It states:

§ 701 **Matters subject to bargaining:**

Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

Section 702 of PERA, 43 P.S. § 1101.702, however, places limitations on the scope of Section 701 by identifying matters specifically not subject to bargaining. It states:

§ 702 **Matters not subject to bargaining:**

*Public employers shall not be required to bargain over matters of inherent managerial policy,* which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives (emphasis added).

■ Section 805 of Act 195 states, in relevant part, that when an impasse is reached between the Commonwealth and "representative of units of guards at prisons or mental hospitals" (AFSCME) *"the impasse shall be submitted to a panel of arbitrators* whose decision shall be final and binding upon both parties ..." (emphasis added). *See supra* note 2. Clearly, the event which triggers the provision of this Section is the arrival at an "impasse" between the parties attempting to negotiate conditions of their collective bargaining agreement. An "impasse" has been defined as "[a] situation offering no escape, difficulty without solution or an argument where no agreement is possible; deadlock." Webster's New World Dictionary, 703 (Second College Edition, 1982). In the present matter, the Commonwealth on June 6, 1985, declined to appoint an arbitrator and unequivocally refused to proceed to arbitration. Since no bargaining or resolution of disputes can occur if one of the parties refuses to participate in discussions, *a fortiori*, an impasse is created. Accordingly, pursuant to the express statutory scheme of Section 805, the unresolved issues were required to be sent to arbitration.[6]

■ We believe that this procedure is consistent with existing Pennsylvania law and policy which requires that procedural questions and factual questions regarding the scope of matters to be resolved by arbitration are to be determined by the arbitrator. *See Lincoln University v. American Association of University Professors,* 467 Pa. 112, 354 A.2d 576 (1976). Any arbitration award would ultimately be subject to review by the Board, whose own determination may in turn be appealed to the Commonwealth Court. *Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Board,* 481 Pa. 81, 392 A.2d 256 (1978). Should the arbitrator make an award concern-

6. Subsequent negotiations resulted in the Commonwealth agreeing to appoint its arbitrator and participate in the selection of a neutral arbitrator who would preside solely over those issues which both parties deemed bargainable. The refusal by the Commonwealth to engage in the appointment of arbitrators in this regard is, therefore, no longer a point of contention.

ing issues not properly subject to bargaining, such award would not be facially invalid. This Court has held that arbitration is not improper simply because the arbitrator might fashion an invalid award. *PLRB v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982). The aggrieved party's interests, however, are still protected by its statutory right to appeal from the final determination and award made by the arbitrator.[7]

We agree with Appellant's argument that the Commonwealth Court's decision in the matter *sub judice*, reversing the Board, is in conflict with several of its own prior decisions. In *East Pennsboro Area School District v. Commonwealth of Pennsylvania, et al.*, 78 Pa.Commw.Ct. 301, 467 A.2d 1356 (1983), the Commonwealth Court held:

[I]t cannot too often be stated that Pennsylvania labor policy in the public area requires the submission to arbitration of disputes involving the collective bargaining agreement. *County of Allegheny v. Allegheny County Prison Employees*, 476 Pa. 27, 381 A.2d 849 (1977). By [sic] allowing the employer to unilaterally refuse to submit a dispute to arbitration would in effect allow the employer's interpretation to control. While the PLRB has statutory authority to determine questions of arbitrability when it decides an unfair labor practice has been committed by a refusal to arbitrate, the Supreme Court has made clear that questions of arbitrability must first be submitted to an arbitrator and that any refusal to arbitrate a dispute concerning a collective bargaining agreement is *per se* an unfair labor practice.

7.  42 Pa.C.S.A. § 763(b) states in relevant part:
    **(b) Awards of arbitrators.**—The Commonwealth Court shall have exclusive jurisdiction of all petitions for review of arbitrators appointed in conformity with statute to arbitrate a dispute between the Commonwealth and an employee of the Commonwealth.
    42 Pa.C.S.A. § 933(b) states in relevant part:
    **(b) Awards of arbitrators.**—Except as otherwise prescribed by any general rule adopted pursuant to section 503, each court of common pleas shall have jurisdiction of petitions for review of an award of arbitrators appointed in conformity with statute to arbitrate a dispute between a government agency, except a Commonwealth agency, and an employee of such agency.

78 Pa.Commw.Ct. at 308–9, 467 A.2d at 1359.

It is precisely that reasoning which compels the decision we render today.

■ We believe that our decision today, affirming the conclusions reached by the Hearing Examiner and the Pennsylvania Labor Relations Board below, best effectuates the goals and policies sought to be fostered by arbitration. It is unquestioned that arbitration is a process favored today in this Commonwealth to resolve disputes. "By now it has become well established that 'settlement of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested, arbitration is favored by the courts.'" *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 662–3, 331 A.2d 184, 185 (1975) [quoting *Mendelson v. Shrager*, 432 Pa. 383, 385, 248 A.2d 234, 235 (1968)]. This Court has recognized that the general policy in favor of arbitration in this Commonwealth is even more compelling in the arena of labor disputes. *Class of Two Hundred Administrative Faculty Members of State Colleges in the Commonwealth of Pennsylvania v. Scanlon*, 502 Pa. 275, 466 A.2d 103 (1983). Furthermore, pursuant to Section 805 of Act 195, *supra,* unresolved disputes concerning the collective bargaining agreement between these parties are expressly required to be resolved by arbitration.

We have recognized that one value of arbitration, especially in the context of public employer-public employee labor disputes, is the expeditious resolution of disputes that results therefrom. We held in *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969), that:

The inherent differences between an arbitration panel on the one hand, and courts and administrative agencies on the other, well explain the logic behind the distinction. An arbitration panel is a temporary "one shot" institution, convened to respond to a specific conflict. Once it reaches a decision it is disbanded and its members disperse. Its resolution of the dispute must be sure and

swift, and much of its effectiveness would be lost if the mandate of its decision could be delayed indefinitely through protracted litigation.

436 Pa. at 172–3, 259 A.2d at 440. It is in the best interest of the health and safety of citizens of this Commonwealth that necessary and essential public employees have their labor disputes with the public employer resolved promptly and with a minimum of counter-productive acrimony.

Crucial to properly resolving all labor disputes is the recognition of the goals and purposes to be served by the various dispute resolution mechanisms which exist to resolve labor conflicts. The principal goal of expeditiously resolving bargaining impasses is especially critical in the present matter for two reasons. First, appellant AFSCME is representing correctional officers and psychiatric security personnel who perform an essential service in protecting the safety and welfare of the citizens of this Commonwealth. Second, by virtue of the necessity of their continuous employment, the legislature has denied prison guards and psychiatric security personnel the right to strike. The *quid pro quo* for such an arrangement is the provision for mandatory binding interest arbitration which expedites the resolution of collective bargaining impasses. The PLRB correctly concluded, after considering the charges of unfair labor practices, that the rights of both parties were best served by requiring the Commonwealth to proceed immediately to arbitration. To conclude otherwise would result in an unwarranted delay of the only recourse available to the members represented herein by AFSCME. A protracted litigation process, the alternative required by the court below, contravenes the express policy behind resolving labor disputes, and also conflicts with our clearly stated admonition against the practice of engaging in preliminary litigation to resolve in "one forum the power of another forum to decide the substantive issue." *Bald Eagle School District, supra,* 499 Pa. at 68, 451 A.2d at 674. Additionally, should the issues involved be determined to fall within the Commonwealth's managerial prerogative, and thus be

non-negotiable, the Commonwealth's rights are still protected by its statutory right to appeal any such arbitration award.

Accordingly, the order of the Commonwealth Court is reversed.[8]

**8.** In view of our disposition of this issue, we need not address appellants' argument that the Commonwealth Court exceeded its scope of review.