631 A.2d 723

CHESTER UPLAND EDUCATION ASSOCIATION, Appellant,

v.

PENNSYLVANIA LABOR RELATIONS BOARD
and Chester–Upland School District.

CHESTER UPLAND SCHOOL DISTRICT

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 13, 1993.

Decided Aug. 24, 1993.

Leonard V. Tenaglia, for appellant Chester Upland Educ. Association.

Timothy Tietze, for appellant, Pennsylvania Labor Relations Bd.

David C. Corujo, for appellee Chester Upland School Dist.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The appellants Pennsylvania Labor Relations Board (PLRB) and Chester Upland Education Association (Association) appeal a Delaware County Common Pleas Court order denying the PLRB's motion to quash and granting Chester Upland School District's (School District) petition for review and reversing the PLRB's decision. In that decision, a hearing examiner held that the School District committed an unfair labor practice and ordered it to submit to grievance arbitration.

In June of 1991, the Association filed a grievance alleging that the School District had furloughed teachers or placed them on part-time status in violation of the seniority provisions of the collective bargaining agreement between the Association and the School District. The School District refused to participate in grievance arbitration procedures set forth in the bargaining agreement on the grounds that the subject matter of the dispute was not subject to those grievance procedures.

The Association then filed an unfair labor practice with the PLRB. The School District argued before a PLRB hearing examiner that the PLRB lacked jurisdiction and that the grievance provision found in Article IV(C)[1] of the bargaining agreement excluded from the grievance process matters in

1. Discipline–Grievance Procedure

No teacher shall be disciplined, formally reprimanded, reduced in rank or compensation or deprived of any benefits secured herein without justifiable reason. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the grievance procedure herein set forth. This provision shall not apply to circumstances where the teacher would otherwise have a remedy under the provisions of the Public School Code of 1949, as amended.

which a teacher would have a remedy under the Public School Code (School Code).[2] Believing that the School Code gave the Chester Upland teachers a remedy if the furloughs and reductions in status were improper, the School District argued that it was not required to arbitrate. After a hearing, the hearing examiner issued a proposed decision and order (PDO) on March 17, 1992. Therein, the hearing examiner concluded, on the authority of the Supreme Court's decision in *Pennsylvania Labor Relations Board v. Bald Eagle School District,* 499 Pa. 62, 451 A.2d 671 (1982) and this Court's interpretation of that decision in *East Pennsboro Area School District v. Pennsylvania Labor Relations Board,* 78 Pa.Commonwealth Ct. 301, 467 A.2d 1356 (1983), that the School District had committed an unfair labor practice in violation of Section 1201(a)(1) and (5) of the Public Employe Relations Act, 43 P.S. § 1101.-1201(a)(1) and (5),[3] by refusing to process the Association's grievance for arbitration. The hearing examiner directed the School District to arbitrate.

The School District did not file exceptions to the PDO. Instead, less than a month after its issuance, the School District filed a petition for review in common pleas court in which it asked that "the decision and order of the Pennsylvania Labor Relations Board be reversed" and that the court "determine that a request to review an alleged demotion of a professional employee is not within the grievance arbitration provisions of the collective bargaining agreement."

2. Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

3. § 1101.1201. **Unfair practices by public employers and employe organizations; acts prohibited.**
 (a) Public employers, their agents or representatives are prohibited from:
 (1) Interfering restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

 . . . . .

 (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

The PLRB filed a motion to quash the School District's petition on the ground that the School District had failed to avail itself of the administrative remedy of filing exceptions to the hearing examiner's PDO. It also filed a petition for enforcement of the PDO, which it now regarded as final since the School District had neither filed exceptions nor sought a stay of that PDO.

On September 1, 1992, the common pleas court denied the PLRB's motion to quash and, on consideration of the School District's petition for review, reversed the PLRB's order directing the School District to cease the unfair labor practice of which the Association complained. It is the common pleas court's order of September 1, 1992 which the appellants PLRB and Education Association ask us now to review.

 Though framed in terms of challenges to several of the procedural aspects of this case, the issues presented by the appellants and counter-statements made by the appellees all lead to what is, in essence, a single question. Did the School District violate Sections 1201(a)(1) and (5) by refusing to submit to arbitration? A determination of this question turns on who in the first instance has the power to decide whether a dispute between a School District and a school employees' union is arbitrable under the grievance provisions of a collective bargaining agreement.

The Association and the PLRB argue that the School District is not entitled to have an adjudication of this question because it failed to file exceptions to the PDO in which the hearing examiner found that the refusal to submit to arbitration of the Association's grievance was an unfair labor practice. Therefore, the argument goes, the challenge to arbitrability has been waived.

The School District counters that it raised and preserved the issue of arbitrability. Indeed, arbitrability was the sole issue before the hearing examiner as the parties submitted it. The School District's petition for review was timely to the common pleas court, and, it maintains, this Court's decisions in *In re Glover*, 137 Pa.Commonwealth Ct. 429, 587 A.2d 25

(1991) and *Harbor Creek School District v. Harbor Creek Education Association,* 146 Pa.Commonwealth Ct. 631, 606 A.2d 666 (1992) in any case allow it to seek relief in common pleas court when it genuinely disputes whether a matter is subject to arbitration. Thus, failure to file exceptions is not fatal to a request for review of the PLRB's determination that a party committed an unfair labor practice by refusing to arbitrate.

In *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976), our Supreme Court stated that "jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the PLRB and nowhere else." As we have done before when confronted with the question of whether the PLRB correctly found a violation of Section 1201(a)(5) in the face of arguments that no agreement to arbitrate exists, we turn to the oft-quoted language in *Bald Eagle,* 499 Pa. at 65, 451 A.2d at 672–673.

We have consistently held that the question of the *scope* of the grievance arbitration procedure is for the arbitrator, at least in the first instance ... [A]rbitration is not an improper remedy simply because an arbitrator might possibly fashion an improper award ... (emphasis in original; citations omitted).

In *East Pennsboro,* 78 Pa.Commonwealth Ct. at 308–309, 467 A.2d at 1359, a case interpreting *Bald Eagle,* we then stated

Pennsylvania labor policy in the public area *requires* submission to arbitration of disputes involving the collective bargaining agreement. By allowing the employer to unilaterally refuse to submit a dispute to arbitration would in effect allow the employer's interpretation to control. While the PLRB has statutory authority to determine questions of arbitrability when it decides an unfair labor practice has been committed by a refusal to arbitrate, the Supreme Court has made clear that questions of arbitrability must first be submitted to an arbitrator and that any refusal to arbitrate a dispute concerning a collective bargaining agree-

ment is *per se* an unfair labor practice. (emphasis in original; citations omitted).

The School District insists that subsequent case law recognizing common pleas court jurisdiction to determine arbitrability has limited the authority of *East Pennsboro*. It asserts that, in any case, we reviewed the collective bargaining agreement in *East Pennsboro* to determine that very question of arbitrability. However, contrary to the School District's assertion, we explicitly *refused* in that case to reach issues concerning the merits of the arbitrability question until the arbitrator first ruled. *Id.* at 313, n. 3, 467 A.2d at 1361, n. 3. Likewise, we will refuse to do so here.

The cases the School District commends to us for the contrary proposition that judicial review in lieu of arbitration is warranted actually demonstrate the correctness of the hearing examiner's decision here.

While we said in *Garnet Valley Service Personnel Association v. Garnet Valley School District*, 128 Pa.Commonwealth Ct. 182, 186, 563 A.2d 207 (1989), that it is "within the province of this court to determine as a threshold issue whether the parties ... have agreed to submit that dispute to an arbitrator's jurisdiction," the employee's grievance was in that case taken to arbitration by agreement of the parties. It was not until *after* the arbitrator determined that the grievance was arbitrable and the grievance was upheld that the common pleas court was asked to vacate the arbitration award. Thereafter, this court, in reviewing the common pleas court's decision to vacate, decided that "threshold" question in the school district's favor. In *Harbor Creek, after* a personnel action was submitted to arbitration and the trial court affirmed a decision that the grievance was arbitrable, we reversed the court's refusal to vacate the arbitration award, concluding that the grievance was not arbitrable because the subject employee was not covered by the collective bargaining agreement. In each case, the parties submitted to arbitration and thereafter sought the judicial review to which they were statutorily entitled.

In both *Middle Bucks Education Association v. Executive Council, Middle Bucks Area Vocation Technical School,* 122 Pa.Commonwealth Ct. 595, 552 A.2d 763 (1989) and *In re Glover,* the respective school district employers sought a stay of grievance arbitration pursuant to Section 7304(b) of the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7304(b). In *Middle Bucks,* a tenured professional employee was dismissed under the School Code. The employee did not appeal but filed a grievance and attempted to proceed to arbitration. The employer requested a stay of arbitration on the grounds that the School Code was the exclusive avenue for the employee's challenge. The trial court stayed the arbitration and this Court affirmed. In *In re Glover,* an employee grievance was processed to the fourth step, submission to arbitration. The employer then filed an action in common pleas court to enjoin arbitration and the court granted that relief. We held there that a stay is proper when a collective bargaining agreement expressly provides that certain personnel actions are not subject to arbitration. If the court finds an express agreement not to arbitrate, Section 7304(a) of the UAA allows the court to enjoin arbitration. *Glover,* 137 Pa.Commonwealth Ct. at 434, 587 A.2d at 28.[4]

Here, the school district did not submit to grievance arbitration or seek a stay of those proceedings. Had it submitted to arbitration, the arbitrator may have found the grievance not to be arbitrable; had it sought a stay of arbitration pursuant to the UAA under the *Middle Bucks* and *Glover* criteria, the common pleas court may have granted an injunctive relief. The school district chose to do neither, instead waiting until it had been charged with an unfair labor practice to seek judicial redress. That *Middle Bucks* and *In re Glover* may allow judicial intervention under limited circumstances when, indeed, such intervention is sought cannot help the employer who chooses not to participate in arbitration until an unfair labor practice is lodged.

4. In that case, Judge Kelley explained that there is nothing in our *Middle Bucks* decision, where a stay of arbitration under Section 7304(b) of the UAA was sought, that is inconsistent with the earlier *Hollinger* and *East Pennsboro* decisions.

We believe the procedure which the School District *should* have followed was straightforwardly explained in the recent decision in *Commonwealth, Office of Administration v. Pennsylvania Labor Relations Board*, 528 Pa. 472, 598 A.2d 1274 (1991), an interest arbitration case which nonetheless cited our *East Pennsboro* decision with approval. Chief Justice Nix, writing for the unanimous Court, stated

> We believe that this procedure is consistent with existing Pennsylvania law and policy which requires that procedural questions and factual[5] questions regarding the scope of matters to be resolved by arbitration are to be determined by the arbitrator ... Should the arbitrator make an award concerning issues not properly subject to bargaining, such award would not be facially invalid. This Court has held that arbitration is not improper simply because the arbitrator might fashion an invalid award. *PLRB v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982). The aggrieved party's interests, however, are still protected by its statutory right to appeal from the final determination and award made by the arbitrator.

*Id.*, 528 Pa. at 478–479, 598 A.2d at 1277 (footnote in original omitted; citations omitted).

To summarize, the decisions of the Supreme Court and this Court are not inconsistent and make clear the procedures and scope of review in grievance arbitration.

■ First, the scope of matters to be resolved by grievance arbitration is in the first instance for the arbitrator to determine. *Bald Eagle.* An employer may, however, file a petition for a stay of arbitration proceedings under 42 Pa.C.S. § 7304(b) if the employer can show a substantial, bona fide dispute as to arbitrability. *Middle Bucks.* If, on consideration of that stay petition, it can be said with certainty that the collective bargaining agreement does not address the

---

5. In *East Pennsboro*, Judge Barry, citing *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977), stated that the question of arbitrability is essentially one of fact, turning as it does on the intent of the parties to the agreement.

dispute which would be arbitrated, the common pleas court may grant a stay. *Central Bucks School District v. Central Bucks Education Association,* 157 Pa.Commonwealth Ct. 100, 629 A.2d 196 (1992). A trial court should not, however, enjoin arbitration unless "it can be said with positive assurance" that the parties have agreed the dispute is not subject to arbitration. *Phoenixville Area School District v. The Phoenixville Area Education Association,* 154 Pa.Commonwealth Ct. 438, 624 A.2d 1083 (1993).

Second, after arbitration, a party may, on appeal to the common pleas court, raise the question of arbitrability as a threshold matter if the question has been raised before the arbitrator. *See, e.g., Harbor Creek.* If it is established before the common pleas court that the dispute is not subject to arbitration, then that court may vacate the arbitration award. *Garnet Valley.*

Finally, where no stay is sought and an employer does not process a grievance or otherwise participate in arbitration, the question before the PLRB is whether the refusal to arbitrate is an unfair labor practice, and jurisdiction to determine this question is first in the PLRB "and nowhere else." *Hollinger.* A party cannot unilaterally refuse to proceed to arbitration, since section 1201(a)(5) of the PERA makes it an unfair labor practice to refuse to arbitrate grievances in good faith. *East Pennsboro.*

Rather than arbitrate this grievance, the School District chose unilaterally not to participate in the grievance process. The hearing examiner found this to be an unfair labor practice and we hold, for the reasons discussed here, that his determination was correct. We therefore reverse the decision of the common pleas court and reinstate the hearing examiner's proposed decision and order.

## ORDER

AND NOW, this 24th day of August 1993, the order of the Delaware County Common Pleas Court at No. 92–05477, dated September 1, 1992, is hereby reversed.