# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gateway School District,            :
                                    :
                    Appellant       :
                                    : No. 388 C.D. 2017
          v.                        : Submitted: November 13, 2017
                                    :
Teamsters Local 205                 :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P)
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  January 3, 2018**


          Gateway School District (District) appeals from the order of the Court
of Common Pleas of Allegheny County denying the District's petition to vacate an
arbitration award that reinstated Elizabeth Gigliotti (Grievant) to her former position
with the District and reduced the discipline imposed on Grievant to a one-day
suspension.  For the following reasons, we affirm.

          Grievant was employed at the District for 25 years and at the time of
her discharge, she worked as a full-time secretary at an elementary school.
(Arbitrator Opinion and Award at 2, Reproduced Record (R.R.) 2a.)  One other
secretary worked with Grievant in the school office, but only part-time during the
morning hours.  (Opinion and Award at 2, R.R. 2a.)  Grievant and the other secretary
shared responsibility for monitoring parents and visitors entering the building and

students leaving the building and therefore one of the two secretaries or another staff person was required to be present in the office at all times. (*Id.*)

Grievant's employment was governed by a Collective Bargaining Agreement (CBA) entered into between the District and Teamsters Local 205 (Union) on behalf of her bargaining unit, which included secretarial, custodial, clerical, food service and maintenance employees and teacher aides. (CBA § 1.1, R.R. 10a.) Grievant worked on an 11-month schedule, which entitled her to sick leave and personal days, but not vacation days. (Opinion and Award at 2, R.R. 2a; CBA §§ 8.1, 10.1, 10.2, R.R. 26a, 29a-30a.) Pursuant to the CBA, an employee is only permitted to use sick leave for his or her illness. (CBA § 10.1.G, R.R. 29a ("The use of sick days is for the employee's sickness only and not for the sickness of a child, parent, grandparent, etc.").) The CBA contains a Management Rights clause which provides the District with "the exclusive right and power to manage, control and conduct its business, ….including the right to …suspend [or] discharge [its employees] as it deems advisable, subject, however, to the other provisions" of the CBA. (CBA § 3.1, R.R. 11a.) The CBA further provides that the District is limited in its ability to suspend or discharge employees only to situations where there is "just cause." (CBA § 12.1, R.R. 34a ("The employer shall not discharge nor suspend any employee without just cause.").) The term "just cause" is not defined in the CBA.

On Thursday, May 19, 2016, Grievant entered an absence into the District's scheduling system requesting half-day sick leave for the afternoon on the following day, Friday, May 20, 2016. (Opinion and Award at 3, R.R. 3a.) On Friday morning, Grievant informed the District's Human Resources Director (HR Director) that no one had picked up her absence in the scheduling system and that the part-

2

time secretary would not be able to stay for the afternoon to cover Grievant's shift. (*Id.*) Assuming that Grievant had pre-scheduled sick leave to attend a doctor's appointment, the HR Director asked Grievant what time her appointment was, to which Grievant responded that she did not have an appointment. (*Id.*) The HR Director then asked Grievant how she knew on Thursday she would be sick the following afternoon, and Grievant at that point responded that she could not tell a lie and she actually intended to attend her granddaughter's school function on Friday afternoon. (*Id.*) Grievant had already exhausted her allocated personal days for the year and therefore she could only take off through sick leave. (*Id.* at 5, R.R. 5a.)

On at least three occasions on the morning of Friday, May 20, 2016, the HR Director asked Grievant whether she could stay at work through the afternoon and whether she really wanted to leave. (*Id.* at 3, R.R. 3a.) Grievant responded that she could not stay and she wanted to leave. (*Id.*) The HR Director also informed Grievant that if she left on sick leave they would discuss the issue in the future, which the HR Director felt implied to Grievant that there would be consequences for her actions. (*Id.*) Grievant did in fact leave work on Friday afternoon to attend her granddaughter's function assuming that her shift would be covered but without knowing for sure. (*Id.*) The HR Director found coverage for Grievant, but overtime had to be paid to the covering employee. (*Id.*)

On May 23, 2016, the District sent Grievant notice that it intended to hold a *Loudermill* hearing.[1] (Opinion and Award at 4, R.R. 4a.) On July 21, 2016, the District suspended Grievant without pay to be followed by termination effective July 25, 2016 based on a violation of Article 10 of the CBA related to sick leave,

---

[1] A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

3

and the "Immorality Clause" of the Public School Code of 1949.[2] (*Id.* at 2-3, R.R. 2a-3a; *see also* CBA § 10.1, R.R. 29a-30a.) The Union filed a grievance on Grievant's behalf on July 25, 2016. (Opinion and Award at 2, R.R. 2a.) An arbitrator was appointed, and a hearing was held on November 9, 2016 at which both parties presented testimony and documentary evidence.[3] (*Id.*)

On November 22, 2016, the arbitrator rendered an opinion and award granting the grievance in part. The arbitrator determined that the District did not satisfy its burden of proof of showing by clear and convincing evidence that it had just cause for imposing the penalty of unpaid suspension to be followed by termination. (Opinion and Award at 5, 7, R.R. 5a, 7a.) The arbitrator concluded that Grievant did commit "errors in [judgment]" by making a request for sick leave for personal reasons unrelated to her health, changing her time card to reflect sick pay when she was not sick and leaving the school without knowing whether there would be secretarial coverage. (*Id.* at 6, 7, R.R. 6a, 7a.) The arbitrator held that these actions violated the CBA, school policies, school rules and the Public School Code. (*Id*. at 6, R.R. 6a.)

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101–27-202. The notice of suspension and termination does not appear in the certified record and therefore it is unclear on which provision of the Public School Code the District relied in selecting Grievant's discipline. Section 514 allows a school district to remove its officers, employees or appointees for "incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct," but does not specifically reference immorality as a grounds for removal. 24 P.S. § 5-514. Section 1122 permits districts to terminate contracts of professional employees for various reasons, including immorality. 24 P.S. § 11-1122(a).

[3] No stenographic record of the hearing was prepared. (Opinion and Award at 2, R.R. 2a.) Furthermore, though various exhibits were admitted at the arbitrator's hearing, only the CBA was included in the certified record. Our precedent makes clear that we may conduct appellate review in an appeal from a grievance arbitration without the benefit of a transcript or exhibits. *See Rose Tree Media Secretaries & Educational Support Personnel Association-ESPA, PSEA-NEA v. Rose Tree Media School District*, 136 A.3d 1069, 1078-79 (Pa. Cmwlth. 2016).

4

However, the arbitrator concluded that there were "mitigating and unique circumstances at play" that prevented him from upholding the discipline imposed by the District. (Opinion and Award at 6, R.R. 6a.) The arbitrator first noted that Grievant truthfully told the HR Director that she intended to go to her granddaughter's school function when questioned regarding the reasons for her planned sick leave. (*Id*.) Furthermore, the arbitrator determined that the HR Director had the "absolute responsibility and obligation" pursuant to the Management Rights clause of the CBA to deny Grievant's request for sick leave. (*Id*.) The arbitrator found that the HR Director, despite being fully aware of the circumstances related to the request for leave, did nothing to stop Grievant from taking sick leave when she was not sick and the HR Director never clearly informed Grievant that her actions were wrong or that she had to remain at work. (*Id*.) The arbitrator found that the HR Director asking Grievant three times whether she truly wanted to take her leave in fact gave Grievant discretion to continue with her planned leave, and that the HR Director's statement that "we would have to talk about this in the future" did not imply to Grievant that she would face consequences for her actions. (*Id*. at 6-7, R.R. 6a-7a.) In addition, the arbitrator found that the HR Director's statement that she did not have authority to deny sick leave or tell Grievant she had to stay was misplaced and, in any event, the HR Director could have asked another administrator to make those directives. (*Id*. at 6, R.R. 6a.)

Accordingly, the arbitrator concluded that the just cause standard was not met and ordered Grievant reinstated to her former position with all rights and privileges restored. (Opinion and Award at 7, R.R. 7a.) The arbitrator ordered the District to make Grievant whole for her loss of earnings except for the sick leave pay

5

she received on May 20, 2016 and a one-day unpaid suspension that the arbitrator imposed "for Grievant's part in this matter." (*Id.*)

On December 21, 2016, the District filed its petition to vacate the arbitration award with the Court of Common Pleas. The lower court denied the petition by a February 28, 2017 order, concluding that the award was rationally derived from the CBA. The District filed a timely notice of appeal of the Court of Common Pleas' order.

In appeals from arbitration awards resolving labor disputes, reviewing courts employ the essence test, which is a standard of review of great deference. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 939 A.2d 855, 862-63 (Pa. 2007); *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). The essence test is a two-step analysis; first, the reviewing court must determine whether the issue in the arbitration is properly defined within the terms of the applicable CBA. *Cheyney University*, 743 A.2d at 413; *Upper Merion Area School District v. Teamsters Local #384*, 165 A.3d 56, 62 & n.5 (Pa. Cmwlth. 2017) (*en banc*). The court must then analyze whether the award is rationally derived from the agreement; so long as the issue is embraced by the CBA and rationally derived from the agreement, the court will uphold the award. *Cheyney University*, 743 A.2d at 413; *Upper Merion Area School District*, 165 A.3d at 62 & n.5.

As our Supreme Court has explained, under the essence test, "a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining

6

agreement." *Cheyney University*, 743 A.2d at 413; *see also Upper Merion Area School District*, 165 A.3d at 62. The arbitrator's findings of fact are binding on the courts, and the reviewing court may not undertake any independent factual analysis. *Rose Tree Media Secretaries & Educational Support Personnel Association-ESPA, PSEA-NEA v. Rose Tree Media School District*, 136 A.3d 1069, 1078 (Pa. Cmwlth. 2016); *Bethel Park School District v. Bethel Park Federation of Teachers Local 1607*, 55 A.3d 154, 159 n.4 (Pa. Cmwlth. 2012). Furthermore, the court may not generally review the merits or reasonableness of the arbitrator's award as part of the essence test. *Westmoreland Intermediate Unit #7*, 939 A.2d at 863; *Cheyney University*, 743 A.2d at 410-11, 413 n.8. "It is a foundational principle of arbitration that a court may not substitute its own judgment for that of the arbitrator." *School District of Philadelphia v. Commonwealth Association of School Administrators, Teamsters Local 502*, 160 A.3d 928, 933 (Pa. Cmwlth. 2017).

On appeal, the District argues that the award did not satisfy the second prong of the essence test because the mitigating factors on which the arbitrator based his award were not rationally derived from the CBA. Specifically, the District objects to three of the mitigating factors that the arbitrator considered in determining that the District's decision to discharge Grievant was not appropriate: Grievant's truthfulness in telling the HR Director the actual reason for her requested sick leave, the fact that the HR Director did not take any action to prevent Grievant from taking sick leave and the HR Director's failure to inform Grievant that she would face discipline if she took sick leave.[4]

---

[4] In its brief, the District analogizes the present case to *Riverview School District v. Riverview Education Association, PSEA-NEA*, 639 A.2d 974 (Pa. Cmwlth. 1994), in which this Court vacated an arbitrator's decision sustaining grievances brought by two public school teachers who were discharged after being denied personal leave for a week-long ski trip and then falsely calling out

7

As this Court has repeatedly held, in the absence of an express limitation in the CBA, an arbitrator resolving a labor dispute may modify the discipline imposed and hand down a lesser discipline. *See, e.g., Upper Merion Area School District*, 165 A.3d at 66; *School District of Philadelphia*, 160 A.3d at 933-34; *Rose Tree Media School District*, 136 A.3d at 1080; *Abington School District v. Abington School Service Personnel Association /AFSCME*, 744 A.2d 367, 369 (Pa. Cmwlth. 2000). To limit the authority of the arbitrator, the CBA must specifically define or designate the discipline to be imposed or state that the employer has sole discretion to determine the discipline.[5] *Upper Merion Area School District*, 165 A.3d at 66; *School District of Philadelphia*, 160 A.3d at 934-35; *Wattsburg Area School District v. Wattsburg Education Association, PSEA/NEA*, 884 A.2d 934, 939 (Pa. Cmwlth. 2005); *Abington School District*, 744 A.2d at 369-70.

Furthermore, in *Office of Attorney General v. Council 13, American Federation of State, County and Municipal Employees, AFL-CIO*, 844 A.2d 1217

sick to go on the ski trip. *Id.* at 978–79. *Riverview School District* is factually distinguishable for several reasons, including the length of the leave, the fact that the requests for leave were twice denied by the superintendent and then the denials were ratified by the school board and the fact that the teachers were professional employees. *Id*. at 975-976. More importantly, as we have previously observed, the "manifestly unreasonable" standard of review utilized in *Riverview School District* has since been rejected by our Supreme Court and therefore that decision is no longer binding on this Court. *See School District of Philadelphia*, 160 A.3d at 932 n.2, 935 n.3 (citing *Pennsylvania Game Commission v. State Civil Service Commission (Toth)*, 747 A.2d 887, 891 n.7 (Pa. 2000)).

[5] In *Abington School District*, this Court held that, to exempt the type of discipline imposed from the arbitrator's mandate in a grievance arbitration, the CBA must contain language substantially similar to the agreement at issue in *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers, AFL–CIO*, 610 A.2d 506 (Pa. Cmwlth. 1992), which provided that "the arbitrator shall have no power or authority to make any decision contrary to or inconsistent with terms of the agreement or applicable law or which limits or interferes with the powers and responsibilities of the District." *Abington School District*, 744 A.2d at 370 n.3 (quoting *Philadelphia Federation of Teachers*, 610 A.2d at 508); *see also Upper Merion Area School District*, 165 A.3d at 66.

8

(Pa. 2004), our Supreme Court held that when "just cause" is not defined in a CBA, an arbitrator may consider mitigating circumstances in evaluating the discipline imposed. *Id.* at 1224–25; *see also School District of Philadelphia*, 160 A.3d at 933; *Wattsburg Area School District*, 884 A.2d at 939. The Supreme Court concluded that "it was entirely rational" for the arbitrator in that case to award the grievant reinstatement without back pay and a last-chance situation instead of termination, basing the award on three mitigating circumstances of the employee's long service with the employer, dissimilar discipline imposed on other employees for similar offenses and the employee's subsequent rehabilitation. *Office of Attorney General*, 844 A.2d at 1220, 1225. By allowing the arbitrator to interpret just cause "consistent with how that term is generally understood," the Court explained that parties obtained the benefit of their bargain that disputes would be settled through the binding arbitration process. *Id.* at 1225; *see also School District of Philadelphia*, 160 A.3d at 933.

We conclude that, consistent with our limited review in labor grievance appeals, the arbitrator's award was rationally derived from the CBA and thus satisfied the essence test. Under the essence test, this Court may not undertake a review of the merits or reasonableness of the mitigating factors that the arbitrator relied upon here. Our case law makes clear that an arbitrator is permitted to depart from the discipline chosen by the employer except where language of the CBA directly forbids the arbitrator from such a determination. The District does not identify any provision in the CBA here that would limit the scope of the arbitrator's authority to review or modify the Grievant's discipline. Furthermore, where the just cause standard is undefined in the agreement, the arbitrator is also permitted to weigh mitigating factors when interpreting whether the employer has just cause to mete out

9

the selected discipline and these mitigating factors need not be derived from a specific portion of the CBA. Just cause was not defined in the CBA in this matter, and none of the mitigating factors that the arbitrator considered directly conflicts with the CBA.

Because the arbitrator's award under review does not violate the essence test and because the District presents no argument that the award is contrary to an established public policy, there is no basis to disturb the arbitrator's award. The order of the Court of Common Pleas is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Gateway School District, | : |
| | : |
| Appellant | : |
| | : No. 388 C.D. 2017 |
| v. | : |
| | : |
| Teamsters Local 205 | : |

## ORDER

AND NOW, this 3rd day of January, 2018, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**